REED & CHENEY CO. *v.* RICHARDS-WILSON ·CO.

1. CONTRACTS—CONSTRUCTION—INTENT—EXTRINSIC EVIDENCE.
   The intent of the parties to a contract in writing is to be gathered from the instrument itself without extrinsic evidence.

2. SAME—CONDITION PRECEDENT—SALES.
   A condition in a written contract that plaintiff is to accept and pay for fuel-saving devices if said devices save 25 per cent. of the average amount of fuel consumed during the last three winters is a condition precedent; the title to the devices in the meantime remaining in defendants.

3. SAME—BREACH OF CONDITION PRECEDENT—FAILURE OF CONTRACT —GUARANTY.
   Where defendants' contract to sell fuel-saving devices to plaintiff failed for breach of a condition precedent, plaintiff could not recover in an action on a guaranty to save fuel over a period of years, contained therein, since the guaranty was as dependent on the sale as were the other terms of the contract, and when the contract failed the guaranty failed.

Error to Kent; Perkins, J.   Submitted June 10, 1919.   (Docket No. 81.)   Decided July 17, 1919.

Assumpsit by Reed & Cheney Company against Richards-Wilson Company and others for breach of a contract of guaranty.   Judgment for·defendants on a directed verdict.   Plaintiff brings error.   Affirmed.

*Hall & Gillard,* for appellant.

*Eastman & Eastman,* for appellees.

On August 30, 1915, the parties to this litigation entered into the following agreement:

"This agreement, made in duplicate this 30th day of August, 1915, by and between the Richards-Wilson Company of Grand Rapids, Michigan, and hereinafter

On the question of sale of article on trial and approval, see notes in 50 L. R. A. (N. S.) 808; L. R. A. 1918B, 873.

called the seller, and the Reed & Cheney Company, a Michigan corporation, of Grand Rapids, hereinafter called the user;

"Witnesseth: 1. That the seller hereby agrees to install four Blaske Fuel Saving Devices of sufficient size for the four horizontal boilers of the user, located at their greenhouse No. 2, Madison ave., Grand Rapids, Michigan, who agrees to operate the same as near as possible according to the printed instructions of the Heat Saver Co., of Chicago, Illinois, copy of which are attached to this contract. The seller guarantees that the device will save the user during the season of 1915-16, and during a period of nine years thereafter a minimum of 25% of the fuel used in former seasons. It being understood that the average amount of fuel used during the seasons of 1912-13, 1913, 1914, 1914-15, is to be used as a basis for the comparison.

"2. The user hereby agrees and promises to pay to the order of the seller at its office, Grand Rapids, Michigan, the sum of $1,350.00 (thirteen hundred and fifty dollars) for the device on the first day of June, 1916, providing that same shows a decrease during the season of 1915-16 of not less than 25% compared with the average amount of fuel used during the seasons of 1912-1913, 1913-1914, 1914-1915. It is further understood that the user buys equal grade to 1¼-inch lump Red Jacket coal same grade as formerly bought from the Norfolk-Chesapeake Coal Company during the seasons enumerated above, and the average of these seasons according to the books of the user recording amount of coal burned in plant 2 of their greenhouses on Madison ave. Accordingly they have this day stated that their average annual fuel consumption during the seasons heretofore mentioned in dollars and cents amounted to approximately $3,-150.00 (thirty-one hundred and fifty dollars), it being understood that the price per ton of coal was $3.60 (three dollars and sixty cents) or approximately 875 (eight hundred and seventy-five) tons. These figures are to be used as a basis of comparison between the user and the seller in ascertaining the amount of fuel saved during the seasons of 1915-1916 and nine more succeeding years.

"3. In the event that at any time during the ten years' guarantee the device fails to maintain a saving of at least 25% in the consumption of fuel, the seller agrees to reimburse the user any difference between 25% less than the average of the seasons 1912-1913, 1913-1914, 1914-1915 and the amount of fuel actually used in any season, providing that should the number of square feet of greenhouses supplied by the boilers during the life of this contract be increased after October first, 1915, the proportionate amount of fuel necessary to supply this additional number of square feet of greenhouse shall be considered in making this comparison.

"In witness whereof, the said parties hereto have signed this agreement.

"RICHARDS-WILSON COMPANY,
"E. B. PLUMB, Agent.
"REED & CHENEY CO., by C. L. REED.

"I, the undersigned, hereby guarantee the fulfillment of the above contract by Richards-Wilson Company.

"GLENDON A. RICHARDS."

The devices were installed and were used during the season of 1915-16 without any saving of fuel. After the season was over plaintiff mailed defendant company a check for $350.10 with an accompanying letter and statement in which it claimed that the difference in the cost of coal actually used and what would have been used had the devices saved 25% was $999.90, and stated this remittance was in payment of the purchase price of the devices. The check was returned and it appears that negotiations for a settlement were of no avail. The devices were used the following season without any saving of coal and this action was brought to recover 25% of the value of the coal used the two seasons, amounting to $3,205.69. Upon the trial defendant admitted that the devices did not work, established its offer to remove them without damage to plaintiff's property or to leave them in without payment therefor. There was no

proof of any actual damage to plaintiff. At the close of the proof the trial judge directed a verdict for the defendant on the ground that the transaction was a conditional sale or a conditional contract, that the guaranty of saving was collateral to and dependent on the sale, and that the provision in the agreement with reference to damages was in the nature of a penalty and not enforceable.

FELLOWS, J. (*after stating the facts*). We do not find it necessary to consider the last reason advanced by the trial judge or the assignments of error which do not go to the main question, the right of the plaintiff to recover. Undoubtedly plaintiff's counsel is correct in his statement that the trial judge in using the term "conditional sale" did not refer to conditional sales of the kind considered by this court in *Young* v. *Phillips*, 203 Mich. 566; but we doubt that he had in mind the provisions of the uniform sales act (Rule 3, § 11850, 3 Comp. Laws 1915) or had reference thereto. It is more likely that he had reference to conditional contracts referred to by Story in his work on contracts (1 Story on Contracts [5th Ed.], §§ 39, 40), where he said:

"Contracts are also divided into *conditional* and *absolute*. An absolute contract requires no explanations. It is simply an agreement to do or not to do something, at all events. A conditional contract is an executory contract, the performance of which depends upon a condition. It is not simply an executory contract, since the latter may be an absolute agreement to do, or not to do, something; but it is a contract whose very existence and performance depend on a contingency and condition.

"A condition may be either precedent or subsequent. A condition precedent is a condition which must happen before either party becomes bound by the contract. Thus, if a person agrees to purchase the cargo of a certain ship at sea, provided the cargo prove to

be of a particular quality, or provided the ship arrives before a stated time, or at a particular port, each proviso is a condition precedent to the performance of such a contract, and unless the cargo prove to be of the stipulated quality, or the ship arrive within the agreed time, or at the specific port, no contract can possibly arise."

Plaintiff's counsel is correct in his contention, and the trial court so held, that the intent of the parties is to be gathered from the instrument itself without extrinsic evidence. Examining this agreement we find that it is not a present sale of the devices. It is an agreement to give the devices a trial. If the conditions are fulfilled, if they do the work, the agreement becomes a binding contract for the purchase and sale of the devices. If the condition did not happen, if the devices did not do the work, the contract did not bind. The condition therefore is a condition precedent. Under the contract the title to the devices remained in the defendant. *Pierce* v. *Cooley*, 56 Mich. 552. It is an agreement for a sale of the devices upon condition, upon contingencies. Plaintiff was in no way obligated to buy unless the devices worked a saving of 25% of the fuel; the contract depended upon this as its condition. There was no sale unless this condition was fulfilled; it was a condition precedent to the sale, to the taking effect of the terms of the agreement. That the condition failed is admitted. No obligation, therefore, rested on the plaintiff by the terms of the contract and so far as it was concerned the agreement was at an end, the condition had not been fulfilled, the contingency upon which liability on its part depended had not happened. The plaintiff agreed to purchase on the happening of the condition. Likewise, the defendant company agreed to sell on the happening of the condition, and the guaranty was as dependent on the sale, on the happening of the con-

dition, as were the other terms of the contract. The defendant's guaranty that there would be a saving on coal for a period of 10 years from the time the devices were installed was not a guaranty separate and apart from the contract, independent from it and without reference to the sale, but was as much dependent upon the condition, upon the sale, as was the plaintiff's agreement to purchase. When the contract failed as to the plaintiff for breach of condition precedent, it failed as to the defendant for a breach of condition precedent.

These views being in accord with those entertained by the trial judge, it follows that the judgment must be affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.